UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ALAN T. BOYCE, | ) | CIV.  09-4138-KES |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION TO STRIKE, GRANTING |
| vs. | ) | DEFENDANT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT, AND |
| INTERBAKE FOODS, | ) | DENYING PLAINTIFF'S MOTION TO |
| | ) | OPPOSE SUMMARY JUDGMENT |
| Defendant. | ) | |

Plaintiff, Alan T. Boyce, brought a pro se action against defendant, Interbake Foods, alleging violations of Title VII and a state-law claim of intentional infliction of emotional distress. Interbake moves for summary judgment on all counts, which Boyce resists in a motion to oppose the summary judgment motion. Interbake also moves to strike factual statements contained in Boyce's filings, which Boyce resists. Interbake's summary judgment motion is granted and Boyce's motion to oppose summary judgment is denied. Interbake's motion to strike is granted.

**BACKGROUND**

In the light most favorable to Boyce, the nonmoving party, the pertinent facts to this order are as follows:[1]

---

[1] The court liberally construes a pro se litigant's materials. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Similarly, an EEOC complaint should be liberally construed "in order not to frustrate the remedial purposes of Title VII." *Nichols v. Am. Nat'l Insur. Co.*, 154 F.3d 875, 886-87 (8th Cir. 1998) (internal quotation omitted). But the alleged facts in a complaint to the court must grow out of the allegations contained in the EEOC complaint or be reasonably related to the substance of the allegations in the EEOC complaint. *Id.* at 887 (citation omitted). The court reviewed all of Boyce's and Interbake's

Interbake is a cookie and cracker manufacturer. Interbake employees, including Boyce, are represented by the Bakery, Confectionary, Tobacco Workers, and Grain Millers Union, Local No. 433 (Union). At all relevant times in this matter, Interbake and the Union had a collective bargaining agreement (Agreement).

Boyce, an African-American male, began working at Interbake in August of 2005 in the packaging and additions department at Interbake's facility in North Sioux City, South Dakota. Boyce was assigned to the position of enrober operator and his wages and benefits were paid according to the Agreement.

Interbake has an employee handbook that describes two types of disciplinary infractions. Type I Offenses may result in progressive discipline. Type II Offenses subject the offending employee to immediate discharge. Interbake also offers coaching sessions to address an employee's behavior. Interbake keeps a written record of coaching sessions, but coaching sessions are not a part of Interbake's progressive discipline policy.

In January of 2008, Boyce filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and the dispute was resolved through mediation on February 21, 2008. Pursuant to the February 21, 2008, agreement, Boyce received payment and released all pending claims against Interbake.

In February of 2008, Pat Minor, an off-shift scheduler, stated, "If anybody missed work, it would be Alan Boyce and Roxann Favors and Marcia

---

materials and has set out the relevant facts for Boyce's retaliation, hostile work environment, and intentional infliction of emotional distress claims. The court has disregarded facts that do not pertain to these claims.

Jackson." Boyce did not hear this statement but, once he learned of Minor's statement, argues that her words negatively affected his morale. Favors and Jackson are also African-American.

On May 8, 2008, an equipment issue resulted in a cookie jam-up. Boyce temporarily turned off the air blowers to clear the jam, which resulted in cookies with excessive coating. David Williams, Boyce's line manager, instructed Boyce on how to handle a similar situation in the future. Boyce was not disciplined, and he was not issued a coaching session for the May 8 incident.

On June 5, 2008,[2] Interbake issued Boyce a coaching session for using profane language, a Type I Offense, with line manager Carol Mackey. Boyce argues that Mackey "was forced into" the coaching session. *See* Docket 57 at ¶ 28. At some later time (the specific date is unclear from the record), a white employee who cursed in front of team leader Ken Gardner received no discipline. In June of 2008, Boyce filed a charge of discrimination and retaliation for the May 8 incident and the June 5 coaching session with the South Dakota Division of Human Rights (SDDHR).

The SDDHR dismissed the charge because it found neither discrimination nor retaliation by Interbake. Boyce appealed the SDDHR decision to the South Dakota Circuit Court for the First Judicial Circuit. After

---

[2] Boyce alleges that the date of the coaching session was June 2, 2008. Interbake alleges that the date was June 5, 2008. The coaching session paperwork states that the session occurred on June 5, 2008. Because the parties agree that a coaching session occurred on either June 2 or June 5 and the actual date is immaterial to the issues in this order, the court will assume that the coaching session occurred on June 5.

full briefing, the state court determined that neither the May 8 incident nor the June 5 coaching session were discriminatory or retaliatory.

In July of 2008, Minor stated "Alan Boyce is upset" across a two-way radio. Boyce did not hear this statement but claims that it negatively affected his morale.

At some point (the date is unclear from the record), Minor scheduled Boyce to work in the coconut topper position. In order for an employee to be assigned to a position at Interbake, the employee must be qualified to work the position, meaning he worked that position within the prior twelve-month period. When assigning an employee to a position, the manager consults Interbake's computer system to ensure that he meets that position's prerequisites.

Minor scheduled Boyce to work in either the caramel mixing or coconut topper positions. Boyce told Minor that he had not worked either position in over twelve months. Minor reviewed the overtime records, saw that Boyce had worked both positions in overtime shifts, showed Boyce the records, and offered Boyce a choice of positions. Boyce chose the coconut topper position.

At some other time (the specific date is unclear from the record), Boyce argues that an overtime scheduling error occurred. More senior employees normally receive first choice on whether to work overtime and less senior employees are assigned any remaining shifts. When Boyce discovered that less senior employees were available to work overtime, he reported the situation to supervisor Melissa Dale, who took Boyce off of the overtime assignment.

On February 19, 2009,[3] Boyce received a verbal warning, the first step in Interbake's progressive discipline policy, for failing to follow Interbake's washout procedures. Boyce had received a coaching session on May 12, 2007, for a similar infraction. Boyce alleges that a month later, caps on the enrober machine were found to be dirty when the employees set up the machines for the day. An employee brought the dirty caps to the manager's attention, but the manager told the employees that it was "not a big deal and it will be o.k." Docket 66.

In April of 2009, Boyce filed a charge with the EEOC alleging discrimination from the February 19, 2009, verbal warning, and retaliation in the form of Minor's statements, the overtime scheduling error, and being scheduled to work in the coconut topper position. The EEOC dismissed the charge and Boyce received his right-to-sue letter on June 11, 2009. Boyce filed this lawsuit on September 10, 2009.

In November of 2010, Boyce discovered a cookie that he claimed was racially offensive. Boyce moved to compel discovery about the cookie and, after construing Boyce's motion to compel as a motion to modify the Rule 16

---

[3] Boyce alleges that he received a verbal warning on February 18, 2009. Interbake argues that Boyce received the verbal warning on February 19, 2009. Because the paperwork for the verbal warning reflects a "date letter issued" of February 19 (Docket 44-10), and the exact date is immaterial to this order, the court will assume that Boyce received the verbal warning on February 19, 2009.

scheduling order, the court granted the motion. Interbake has provided the requested documents to Boyce and to the court under seal.[4]

The incident involved a cookie made from devil's food cake and decorated with a white frosting smiley face, which was discovered on an Asian-American co-worker's machine in November of 2010. Interbake investigated the matter. Interbake interviewed the co-worker and she stated that she made the cookie for herself, she enjoyed looking at the cookie, and the cookie looked like a "god." The co-worker further stated that she forgot to take the cookie home with her after she made it. Interbake issued the co-worker a coaching session for creating the cookie. In a November 2010 memorandum to all Interbake employees, Tiffani Stegemann addressed the issue of taking scrap materials and making offensive cookies. Docket 92-7 (sealed). Stegemann cautioned all employees that "[t]his behavior needs to stop immediately." Docket 92-7 (sealed).

## DISCUSSION

### I.    Motion to Strike

Interbake moves to strike two sets of documents produced by Boyce. The first set, labeled PUF-6, PUF-10, PUF-20, and PUF-25 (Docket 86 at 8, 12, 23, and 28, and the corresponding, duplicative documents in Docket 84), are alleged affidavits that are unsworn and undated. The second set of documents, labeled PUF 1-5, PUF 7-18, PUF-21, PUF 23-24, and PUF 26-30 (Docket 86 at 2-7, 9-21, 24, 26-27, and 29-33, and the corresponding, duplicative documents

---

[4] Because the additional discovery documents are under seal, the court will only generally discuss the materials contained in the documents.

in Docket 84), contain investigation notes, summaries, and correspondence that are not authenticated by an affidavit.

### A.    Affidavits

Federal Rule of Civil Procedure 56(c) controls the introduction of evidence for purposes of summary judgment. If a fact offered in support of or in opposition to a summary judgment motion is not supported by admissible evidence, the opposing party may object to that fact. Fed. R. Civ. P. 56(c)(2). Interbake objects that Boyce's affidavits are not in proper form and should be stricken from the record.

For an affidavit to be used to support or oppose a motion for summary judgment, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 636 n.20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements" of the federal rules.). The court cannot consider affidavits at the summary judgment level that contain evidence that would be inadmissible at trial. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006) (citing *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005)).

An affidavit is either a sworn declaration or a document signed under penalty of perjury as set forth in 28 U.S.C. § 1746. It is a long-standing rule that an unsworn statement of a lay witness cannot be considered at the

7

summary judgment stage. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970) (reasoning that an unsworn statement did not meet the requirements under Rule 56 and, thus, cannot be considered as evidence); *see also Roby v. McCoy*, 316 Fed. App'x 527, 528 (8th Cir. 2009) (same). District courts properly exclude affidavits at the summary judgment level when the affidavits fail to conform to the federal rules. *See, e.g., Malone v. Ameren UE*, 646 F.3d 512, 512 (8th Cir. 2011) (reasoning that the district court did not abuse its discretion in excluding affidavits that failed to comply with Rules 37 and 26). Additionally, if an affidavit contains hearsay, the hearsay evidence is not considered at the summary judgment stage. *Miller v. Solem*, 728 F.2d 1020, 1026 (8th Cir. 1984).

Although Boyce's unsworn and undated statements of various individuals are notarized statements, they are not affidavits because they lack either the attestation language or the alternative language, "under penalty of perjury," contained in § 1746. Thus, Interbake's motion to strike is granted as to the unsworn statements in Docket 86 at 8, 12, 23, and 28, and the corresponding, duplicative documents in Docket 84.

### B.    Documents Lacking an Affidavit

Boyce also offers a number of documents that are not authenticated by an affidavit. Interbake argues that the documents contain inadmissible hearsay evidence in violation of Federal Rules of Evidence 801(c), 802, and 901(a).

The rules of evidence require a document to be authenticated in order for it to be admissible. Fed. R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence

sufficient to support a finding that the matter in question is what its proponent claims."). To authenticate evidence, the local rules require the party offering the evidence to attach an affidavit to the document. D.S.D. Civ. LR 56.1C ("A party shall attach to an affidavit all relevant documentary evidence in support of or in opposition to a motion for summary judgment."). Failure to follow the local rules can result in the striking of the evidence. *See, e.g.*, *Brannon v. Luco Mop Co.*, 521 F.3d 843, 847 (8th Cir. 2008) (reviewing a motion to strike for failure to follow the local rules under an abuse of discretion standard and affirming the district court).

This court and Magistrate Judge John E. Simko have repeatedly warned Boyce that even though he is a pro se litigant, he must follow the federal and local rules. *See, e.g.*, Docket 82 at 8 (warning Boyce that he must follow Rule 11); Docket 35 at 1 ("The legal process requires the parties to follow the rules."). Boyce did not provide an affidavit attached to the documents and, thus, Interbake's motion to strike those documents (Docket 86 at 2-7, 9-21, 24, 26-27, and 29-33, and the corresponding, duplicative documents in Docket 84) is granted.

## II.    **Summary Judgment Motion**

### A.    **Standard**

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

9

Summary judgment is inappropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court views the facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted). The nonmoving party also receives "the benefit of all reasonable inferences to be drawn from the underlying facts" in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980) (citing *Adickes*, 398 U.S. at 158-59.

**B.     Res Judicata and Timeliness**

Interbake argues that res judicata prevents the court from considering the May 8, 2008, incident where Boyce and supervisor Williams discussed a jam-up and the June 5, 2008, coaching session after Boyce used profanity with Mackey, because the state court issued a final ruling on these issues. Interbake also contends that Boyce violated the timeliness provisions in 42 U.S.C. §§ 2000e-5(f)(1), 2000e-5(e)(1).

The court will not address Interbake's res judicata and timeliness arguments because even if the court considers the evidence to which Interbake objects, summary judgment is still appropriate. Thus, the court will consider

10

all the evidence in determining whether summary judgment should be granted on the merits.[5]

### C.     Title VII Retaliation

Boyce does not allege a cause of action for retaliation in violation of Title VII in his complaint. "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted). Two of Boyce's EEOC charges, dated June 18, 2008, and April 20, 2009, allege retaliation. Because the record reflects that Boyce intended to assert a Title VII retaliation claim during the administrative review process, the court will construe Boyce's complaint as asserting a Title VII retaliation claim.

A plaintiff prevails on a retaliation claim if he can show that the discrimination was a "motivating factor" in the challenged employment decision. 42 U.S.C. § 2002e-2(m). A plaintiff may meet this evidentiary burden through either direct or indirect evidence. *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008). Boyce asserts only indirect evidence of retaliation.

A retaliation claim based on indirect evidence uses the familiar *McDonnell Douglas* burden-shifting analysis. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011). The plaintiff must first prove a three-part prima facie test: (1) he engaged in a statutorily protected activity; (2) he suffered a

---

[5] Even though the court granted Interbake's motion to strike, the court will consider all the evidence submitted in support of and in opposition to the summary judgment motion, including the stricken evidence, when ruling on the summary judgment motion.

materially adverse employment action; and (3) a causal connection exists between the two events. *Id.* (citing *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1077-78 (8th Cir. 2010)). Once the prima face case is proven, the burden then shifts to the employer to show there was a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer makes this showing, the burden shifts back to the employee to show that the proffered reasons are a mere pretext for discrimination. *Id.*

Boyce filed charges of discrimination with the EEOC on January 7, 2008, June 18, 2008, and April 20, 2009. Boyce's filing of his EEOC complaints is a protected activity. *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006). Thus, Boyce has met element one.

The court conducts a case-by-case analysis when determining whether an employer's action is an adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The harm must be material, not trivial, and is viewed under an objective standard. *Id.*

Boyce alleges that he suffered a materially adverse employment action when Interbake scheduled him to work overtime against his will. After Boyce told Interbake that there were less senior employees available to work that shift, Interbake apologized and took Boyce off that overtime position. Because

12

Boyce incurred no detriment in being scheduled to work overtime and subsequently not being scheduled to work overtime, this is not an adverse employment action.

Boyce also contends that his assignment to the coconut topper position is an adverse employment action. In order for an employee to be assigned to a position at Interbake, the employee must have worked that position within the prior twelve-month period. Minor scheduled Boyce to work in either the caramel mixing or coconut topper positions. Boyce protested to Minor that he had not worked the positions in over twelve months. Minor reviewed the overtime records, saw that Boyce had worked the positions in overtime shifts, showed Boyce the records, and allowed him to choose which position he preferred. Boyce chose to work in the coconut topper position.

Boyce alleges neither that his hourly rate of pay was reduced as a result of working in the coconut topper position nor that his benefits were affected. While working in the coconut topper position may not have been Boyce's first preference, Boyce does not allege that Minor or Interbake failed to follow the established procedure for assigning employees their work positions. Instead, the uncontested evidence shows that Minor scheduled Boyce according to the parties' long-standing practice based on a combination of qualifications, preference, and seniority. Any harm suffered by Boyce was trivial and, thus, his assignment to the coconut topper position is not an adverse employment action.

Boyce argues that he suffered an adverse employment action on May 8, 2008, when Boyce and supervisor Williams discussed a jam-up that occurred

13

on one of Boyce's machines. During that conversation, Williams explained to Boyce how to resolve the situation in the future. Because Boyce received neither discipline nor a coaching session for the May 8 incident, the incident is not an adverse employment action.

Interbake alleges that Boyce used profanity with line manager Mackey on May 30, 2008, for which Interbake issued him a coaching session on June 5, 2008. Boyce alleges that he "was issued another coaching, this time for cussing out Line Manager Carol Mackey even though Ms. Mackey said this did not happen." Docket 44-9 at 3. Even assuming that Boyce's version of the facts is correct and that Interbake improperly issued Boyce a coaching session, a coaching session is not a step in Interbake's progressive discipline policy. Because any harm to Boyce from the coaching session was trivial, the June 5 coaching session did not result in a materially adverse employment action.

Similarly, Boyce alleges that a verbal warning for failing to follow Interbake's washout procedures on February 19, 2009, constitutes an adverse employment action. Interbake has established procedures for washing out equipment. Boyce does not allege that he followed the washout procedure and, therefore, Interbake was within its management rights to issue Boyce a verbal warning. The warning did not result in a loss of pay or benefits to Boyce and does not constitute a materially adverse employment action.

Boyce has not met the second element of his prima facie case. But even if one of these actions or these actions viewed in their totality constitute an adverse employment action, Boyce is unable to prove the third element, a causal connection. One method for proving a causal connection is temporal

14

proximity between the protected activity and the adverse employment action. *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003). Boyce does not present any argument on the causal connection and, thus, the court is left only with temporal proximity to establish the requisite causal connection. Generally, however, " 'more than a temporal connection . . . is required to present a genuine factual issue on retaliation.' " *Kipp v. Mo. Hwy. & Transp. Comm.*, 280 F.3d 893, 897 (8th Cir. 2002) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)).

Boyce filed his first EEOC complaint in January of 2008. Five months later, the May 8 cookie jam-up incident occurred, which resulted in a conversation between Boyce and supervisor Williams but did not result in a coaching session or discipline. One month later, Boyce received the June 5, 2008, coaching session. Boyce filed his second EEOC charge in June of 2008. Eight months elapsed before Boyce received his February 19, 2009, verbal warning. A time interval of five, six, or eight months is too long to show temporal proximity sufficient to satisfy the causal connection element. *See, e.g.*, *Trammel*, 345 F.3d at 616 (reasoning that a "time interval of more than two months is too long to support an inference of causation.").

Boyce cannot make out a prima facie case of retaliation in violation of Title VII. Because no genuine issues of material fact remain on the Title VII retaliation claim, summary judgment is granted to Interbake on that claim.

15

### D.    Title VII Hostile Work Environment

Boyce alleges a hostile work environment claim, which requires him to prove a five-part prima facie case: (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir. 2005).

The first element of Boyce's prima facie case is not in dispute because as an African-American Boyce is part of a protected class. *Whitley v. Peer Review Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000). The parties, however, dispute the second element, unwelcome harassment.

To be actionable, the conduct complained of in a hostile work environment claim, " 'must be extreme in nature and not merely rude or unpleasant.' " *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007) (quoting *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006)). "Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.' " *Id.* (quoting *Nitsche*, 446 F.3d at 846). Hostile work environment harassment occurs when the workplace " 'is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

16

environment as viewed objectively by a reasonable person.' " *Id.* (quoting *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003)).

Boyce alleges three incidents of harassment.[6] First, Pat Minor said that "[i]f anyone missed work, it would be Alan Boyce and Roxann Favors and Marcia Jackson" in February of 2008. Second, in July of 2008, Minor said "Alan Boyce is upset." Boyce did not hear either of these two statements. Third, Boyce alleges that in November of 2010 an Asian-American co-worker created a racially offensive cookie when she molded devil's food cake into an oval shape and decorated the cookie with a white frosting smiley face.

Assuming for purposes of argument that these three incidents are harassment and are based on race, there is no evidence that the harassment affected a term, condition, or privilege of Boyce's employment or that the offending conduct created an objectively hostile environment. *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997).

In determining if the working environment was objectively hostile, the fact-finder views the situation from the totality of the circumstances. *Moylan v. Maries Cnty.*, 792 F.2d 746, 750 (8th Cir. 1986) (citing *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). "The harassment must be 'sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.' " *Moylan*, 792 F.2d at 750 (quoting *Henson*, 682

---

[6] Interbake characterizes the two statements by Minor as evidence for Boyce's hostile work environment claim, which Boyce does not dispute. *See* Docket 43 at ¶ 68. Boyce also appears to argue that the cookie incident constitutes a hostile work environment. *See* Docket 82 at 10-12 (discussing the cookie incident in context of Boyce's claims).

F.2d at 904). The harassment must be a practice or pattern and, generally, an employee must "show that the harassment is sustained and nontrivial." *Id.* (citing *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983), *overruled on other grounds*).

The Supreme Court has announced factors to determine if the working environment was hostile: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[T]he plaintiff must show that the conduct was discriminatory in nature and that [he] was singled out for such treatment on the basis of [his] membership in a protected category under the statute." *Hathaway*, 132 F.3d at 1221.

The frequency of incidents here is low. The three incidents occurred over an almost two-year time span. Minor's statements were not severe, humiliating, or threatening. Boyce argues that her statements affected his morale but he offers no facts that her statements unreasonably interfered with his employment. Because the cookie was made from scrap devil's food cake, it is a black-brown color. But the cookie does not objectively appear to stereotype African-Americans or otherwise have racial overtones.

Even if the cookie is racially offensive, the incident occurred once. The employee who created the cookie told Interbake that she meant no harm by the

18

cookie and enjoyed looking at her creation. Interbake issued the co-worker a coaching session and circulated a company-wide memorandum instructing all team members not to make items out of extra ingredients. Docket 92-7. The cookie incident was not so extremely serious as to alter Boyce's working conditions or otherwise create a hostile work environment. Because Boyce has not made out a prima facie case of a hostile work environment, summary judgment is granted to Interbake on Boyce's hostile work environment claim.

### E.    Intentional Infliction of Emotional Distress

To succeed on his claim of intentional infliction of emotional distress, Boyce must make a four-part showing: (1) an act by Interbake that amounts to extreme and outrageous conduct; (2) intent or recklessness by Interbake to cause Boyce severe emotional distress; (3) Interbake's conduct was the cause-in-fact of Boyce's distress; and (4) Boyce suffered an extreme disabling emotional response to Interbake's conduct. *Reeves v. Reiman*, 523 N.W.2d 78, 83 (S.D. 1994) (citations omitted); *Esser v. Tx. Roadhouse Mgmt. Corp.*, No. Civ. 08-4004-KES, 2010 WL 396224, at *5 (D.S.D. Jan. 27, 2010) (applying the same test for intentional infliction of emotional distress when the plaintiff also alleged a Title VII discrimination claim).

Whether the conduct amounts to extreme and outrageous conduct is initially determined by the court. *Harris v. Jefferson Partners*, 653 N.W.2d 496, 500 (S.D. 2002) (citing *Richardson v. E. River Elec. Power Coop.*, 531 N.W.2d 23, 27 (S.D. 1995)). In order for the conduct to be considered "outrageous," the conduct must be " 'so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized

19

community.' " *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).
Liability for intentional infliction of emotional distress will " 'not extend to mere
insults, indignities, threats, annoyances, petty oppression, or other
trivialities.' " *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Interbake states that Boyce's intentional infliction of emotional distress
claim is based on the following incidents: the May 8, 2008, discussion with
Williams, the June 5, 2008, coaching session for using profanity, Minor's two
statements that "[i]f anyone missed work, it would be Alan Boyce and Roxann
Favors and Marcia Jackson" and "Alan Boyce is upset,"  the scheduling error
for overtime that Interbake corrected when Boyce brought it to his supervisor's
attention, the verbal warning on February 19, 2009, when Boyce failed to
follow Interbake's washout procedures, and the cookie discovered by Boyce in
November of 2010.[7]

After reviewing the entire record in this case and viewing the facts alleged
under Boyce's intentional infliction of emotional distress claim in the light most
favorable to Boyce, the court finds that Interbake's conduct has not been
outrageous. Interbake's conduct does not exceed the bounds of decency and
many of the incidents, especially the scheduling, coaching sessions, and verbal
warning, were actions that Interbake was within its rights as an employer to
make. The remaining incidents do not rise to the level of conduct that is utterly

_____

[7]  Interbake characterizes all of the incidents except the cookie incident
as facts supporting Boyce's intentional infliction of emotional distress claim,
which Boyce does not dispute. *See* Docket 43 at ¶ 69. Boyce also appears to
argue that the cookie incident supports this claim. *See* Docket 82 at 10-12
(discussing the cookie incident in context of Boyce's claims).

intolerable in our civilized community. Because no genuine issues of material fact remain on the first element of the intentional infliction of emotional distress test, summary judgment is granted on that claim.

## CONCLUSION

Boyce alleges claims of retaliation and hostile work environment in violation of Title VII and a state-law claim of intentional infliction of emotional distress. Because Boyce cannot establish a prima facie case on any of these claims, summary judgment is appropriate on all claims. Accordingly, it is

ORDERED that defendant's motion to strike (Docket 94) is granted.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket 41) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for an order opposing summary judgment against the defendant (Docket 52) is denied.

Dated August 26, 2011.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE